1
2
3
4
5
6
7
8
9         **UNITED STATES DISTRICT COURT**

10        **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  Genghis Khan Ali Stevenson,                    Civil No. 11-103 LAB (WVG)

13                              Plaintiff,         **DISCOVERY ORDER**

14        vs.

15  Gregory Blake, Calipatria State Prison
    Locksmith; John Doe; Jane Doe,

16                              Defendant.

17

18  **I.    Background**

19        Stevenson filed a motion to compel the production of certain documents on

20  January 18.  Magistrate Judge Gallo denied the motion, and Stevenson then filed an

21  objection to Judge Gallo's ruling for the undersigned Judge to consider.

22        The Court reviews a magistrate judge's discovery rulings under the "clearly

23  erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A).  *Young v.*

24  *CDCR*, 2012 WL 2403865 at *1 (E.D. Cal. June 25, 2012); *Gabriel Technologies Corp. v.*

25  *Qualcomm Inc.*, 2012 WL 849167 at *1–2 (S.D. Cal. 2012) ("Due to discovery motions'

26  non-dispositive nature, decisions by a magistrate judge regarding the scope and nature

27  of discovery are afforded broad discretion.").  *See also Anderson v. Equifax Info. Servs.*

28  *LLC*, 2007 WL 2412249 at *1 (D. Or. Aug. 20, 2007) ("Though Section 636(b)(1)(A) has

1    been interpreted to permit de novo review of the legal findings of a magistrate judge,

2    magistrate judges are given discretion on discovery matters and should not be overruled

3    absent a showing of clear abuse of discretion.").

4        At the outset, it's important to note that Stevenson appears not to object to the

5    entirety of Judge Gallo's discovery ruling.  The ruling covered *six* requests for production.

6    With respect to *five* of them—Nos. 1–2, 4, 5, 7, and 10—Blake responded that no

7    responsive documents existed to produce.  Judge Gallo's ruling accepted that, and

8    Stevenson's pending objection doesn't take further issue.  So, Judge Gallo's ruling with

9    respect to those requests for production is **AFFIRMED**.  The Court finds no clear error or

10    abuse of discretion, anyway.

11        The remaining request for production at issue is No. 3:

12
13
14
> Any and all documents, written reports, originals or copies,
> identifiably as "Confidential Supplement to Appeal Inquiry Log
> No. CAL-A-07-0054" of Calipatria State Prison Completion of
> the investigation final review concerning the incident of March
> 13, 2007.

15    (Doc. No. 26, Ex. E.)  Blake invoked the "official information privilege" and declined to

16    respond to the request.  Judge Gallo's ruling sided with Blake:

17
18
19
20
21
> Here, Plaintiff's arguments are without merit.  The official
> information privilege applies to federal civil rights lawsuits.
> Plaintiff does not offer any authority to suggest the contrary.
> Moreover, even if Correctional Officers Armstrong and Lima
> submitted reports and the requested documents are relevant
> to Plaintiff's claims, the relevancy of the documents does not
> overcome a claim of privilege.  Therefore, Defendant's
> response to this Request for Production of Documents was
> proper.

22    (Doc. No. 28 at 2.)  Stevenson's grievance with Judge Gallo's ruling, in essence, is that

23    Blake's invocation of the privilege was procedurally defective and Judge Gallo simply

24    rubber-stamped it.

25    **II.**    **Discussion**

26        A party wishing to invoke the official information privilege must first comply with a

27    series of procedural requirements to make a threshold showing that the privilege applies.

28    These were specified in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987).  This

Court has previously looked to *Kelly* for guidance.  *See, e.g.*, *Bryant v. Armstrong*, 2012 WL 2190774 at *6–7 (S.D. Cal. June 14, 2012).  If the threshold showing is made, the Court then weighs the potential benefits of disclosure against the potential disadvantages.  *Id.*  It usually does this by reviewing the documents at issue in camera. *Id.* (citing *Soto v. City of Concord*, 162 F.R.D. 603, 613) (N.D. Cal. 1995)).

First, the party must invoke the privilege by name.  *Id.*  There's no doubt that Blake did that.  (Doc. No. 26, Ex. E.)

Second, it must supplement the invocation with "a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration."  *Id.*  This affidavit cannot come from the author of the documents at issue, or from "the lawyer representing the agency or officers in the litigation."  *Id.*  Rather, "[i]t is essential that the affidavit come from an official in the affected agency."  *Id.*  Blake complied with this requirement, too.  Blake's invocation of the privilege was supported by a declaration from G. Nunez, a "Correctional Counselor II" at Calipatria State Prison assigned to the Litigation Office.  Ms. Nunez represented that she is "familiar with staff personnel records, disciplinary files, and staff investigations, and how those files and documents are maintained by the CDCR at Calipatria."  (Doc. No. 27-1, Ex. C, ¶ 1.) Stevenson now argues that Ms. Nunez is actually the Litigation Coordinator at Calipatria, and accordingly, that she is a "lawyer representing the agency" and cannot be the one to invoke the confidential information privilege.  The Court disagrees.  Ms. Nunez is not a lawyer, and she is certainly not representing Blake in this litigation.  To the contrary, her professed familiarity with staff investigations and records maintenance makes her just the person to submit a declaration in support of the confidential information privilege.

Third, the affidavit must include: (1) an affirmation that the agency has maintained the confidentiality of the documents at issue; (2) a statement that the official has personally reviewed the documents; (3) a specific identification of the governmental or privacy interests that would be compromised by production; (4) a description of how

- 3 -

11cv103

disclosure subject to a carefully crafted protective order would create a substantial risk of harm to these interests; and (5) a projection of how much harm would be done to these interests if disclosure were made. *Id.* at 670. Stevenson argues, first, that (2) isn't satisfied by the Nunez declaration. The Court agrees with this argument. While Ms. Nunez's declaration does profess familiarity with the investigation, it does not indicate that she personally reviewed the documents that came out of it. Her declaration merely claims that "a confidential inquiry was done" and that "[a]n employee of Calipatria conducted the confidential investigation, including verbally interviewing Stevenson and several staff members, in the course of his duties." (Doc. No. 27-1, Ex. C, ¶ 2.) Ms. Nunez also notes that she is "familiar with . . . staff investigations, and how those files and documents are maintained," but she does not note specific familiarity with the investigation of Stevenson's case. (*Id.* at ¶ 1.) Stevenson argues, second, that the Nunez declaration fails (4) for not considering a protective order. Again, the Court agrees. In fact, in asserting the privilege Nunez warns against the dissemination of documents to other inmates, which is precisely the kind of harm a protective order could prevent. (*Id.* at ¶ 6.)

Stevenson's third grievance with the Nunez declaration is that its identification of the government and privacy interests at stake is vague and not tailored to the specifics of this case. The Court agrees. The Nunez declaration begins with the blanket statement that it's against policy to disclose copies of internal investigations due to privacy and security concerns. (Doc. No. 27-1, Ex. C, ¶ 3.) Then, to its credit, it identifies a number of harms that would accompany a lifting of the policy. (*Id.* at ¶ 4.) To its discredit, though, the harms are stated in a rather general and conclusory manner: "a negative impact on departmental disciplinary procedures"; "a chilling effect on employees' willingness to share potentially important information regarding job performance"; "a negative impact on internal investigations and assessments of officers and employees"; and "a negative impact of taking of corrective actions." (*Id.*) The problem is that none of these concerns are tailored to Stevenson's document request or this case in particular.

1    Indeed, the declaration is general enough that it could presumably be submitted, with

2    minor modifications, in any prisoner civil rights case in which the prisoner seeks access

3    to internal investigation documents.  The court in *Kelly*, in fact, explicitly rejected the

4    general claim that if investigation documents were released officers would refuse to

5    cooperate with future investigations:

6               Chief of Police Joseph D. McNamara, in his affidavit, claims
                the government privilege on the grounds of "public interest"
7               and because he believes that without assurances of
                confidentiality officers will refuse to cooperate with Internal
8               Affairs Investigations.  As has been emphasized in this
                opinion, a general claim of harm to the "public interest" is
9               insufficient to overcome the burden placed on the party
                seeking to shield material from disclosure.  In order to
10              overcome the moderately weighted presumption in favor of
                disclosure the party claiming the official information privilege
11              must, at least, specifically describe how disclosure under a
                carefully tailored protective order would substantially harm a
12              significant government interest and state how much harm
                would be done to those threatened interests by disclosure *in*
13              *this particular case*.

14              For similar reasons, defendants cannot meet their burden
                simply by asserting, without empirical support, that officers will
15              refuse to cooperate with Internal Affairs investigations if their
                statements are subject to even limited disclosure.
16

17   *Kelly*, 114 F.R.D. at 672 (emphasis added).

18          The Court finds that, in light of the above, Blake has failed to make a threshold

19   showing that the confidential information privilege applies.  As a result, the Court can't

20   (and the Magistrate Judge didn't) conduct the requisite balancing and weigh the cost of

21   disclosure to Blake against the benefit of disclosure to Stevenson.  Instead of conducting

22   this required balancing, the Magistrate Judge seemed to categorically accept the

23   defendant's assertion that the privilege applied.  This was clear error.  Just because

24   documents are protected by the official information privilege does not mean they are not

25   discoverable.  To the contrary, they are discoverable "if the potential benefit in discovery

26   outweighs any potential disadvantages."  *Bryant v. Thomas*, 2012 WL 1985310 at *3

27   (S.D. Cal. June 1, 2012) (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th

28   //

Cir. 1990).  Plaintiff's objection is **SUSTAINED** and the matter is referred to the

Magistrate Judge to reevaluate the issue under the correct legal standard.

      **IT IS SO ORDERED**.

DATED:  August 9, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

11cv103