UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENGHIS KHAN ALI STEVENSON<br><br>Plaintiff,<br><br>v.<br><br>GREGORY BLAKE, et al.,<br><br>Defendants. | Civil No. 11-0103-LAB (WVG)<br><br>REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S REQUEST FOR ADDITIONAL DISCOVERY<br>(Doc. No. 33) |

Plaintiff Genghis Khan Ali Stevenson ("Plaintiff") sues Defendant Gregory Blake ("Blake") for alleged violations of his civil rights under 42 U.S.C. Section 1983. Plaintiff alleges that on March 13, 2007, his civil rights were violated when Blake was fixing the lock on the holding cage in which Plaintiff was placed. Pending before the Court is Blake's Motion for Summary Judgment ("Motion"). Having considered the Motion, Opposition[1] and Reply papers, the evidence presented, and the relevant law, the Court

---

[1] On November 19, 2012, Plaintiff filed a Motion For Extension of Time To Submit A Supplemental Opposition to Blake's Motion. On November 26, 2012, the Court granted Plaintiff's Motion for Extension of Time and ordered that a Supplemental Opposition to Blake's Motion be filed by December 17, 2012. Plaintiff did not file a Supplemental Opposition.

RECOMMENDS that Blake's Motion be DENIED. The Court also DENIES Plaintiff's request for additional discovery.

### I. BACKGROUND

#### A. Procedural Background

On January 18, 2011, Plaintiff filed a civil rights Complaint alleging that Blake acted deliberately indifferent to his safety in violation of the Eighth Amendment.

On September 15, 2011, Blake filed an Answer to the Complaint, and a Demand For Trial By Jury.

#### B. Plaintiff's Allegations

The Complaint alleges as follows:

Plaintiff is an inmate incarcerated at Calipatria State Prison. [Complaint Under the Civil Rights Act 42 U.S.C. § 1983 ("Complaint") at 1.][2/] On March 13, 2007, Plaintiff was transported by Correctional Officer Lima ("Lima") to the Administration Segregation Unit's ("A.S.U.") law library. (Id. at 3.) Plaintiff was placed and locked inside an individual isolated holding study cage by Officer Armstrong ("Armstrong"). (Id.)

Defendant Blake, the correctional plant locksmith, entered the study cage area with his welding equipment where Plaintiff was located. (Id.) Armstrong asked Blake, "What are you doing?" Blake replied that "he was going to fix the study cage locks today." (Id.) Armstrong then asked, "Can't you see I have inmates inside of the study cages?" (Id.) Blake ignored Armstrong and put on his

---

[2/] All page references to documents contained in the Court's docket are to the Court Clerk's renumbered pages, not the document's native, pre-filing, pagination.

safety gloves, helmet, and face shield, and began to weld on the study cage in which Plaintiff was placed. (Id.)

Plaintiff was less than one foot away from the study cage door where Defendant welded, and had nowhere to escape when flames, fire, and sparks began to fly. (Id.) While Blake welded, Plaintiff was burned on his arm, left side of his body, and in his left eye even though he tried to protect himself. (Id.) Plaintiff asked Blake to stop because he was getting burned by the sparks, but Blake ignored Plaintiff's pleas. (Id.) Blake welded on Plaintiff's study cage for five to ten minutes before Blake moved on to the next study cage. (Id.)

Plaintiff informed Armstrong that he was burned on his face, the left side of his body, and that flames and sparks got into his eye, which caused redness and blurry vision. (Id.) Shortly thereafter, Plaintiff was transported by Lima to the A.S.U. medical clinic where he was examined and treated for injuries. (Id.)

Plaintiff asserts that he did not ask and did not want "to be inflicted with this unnecessary pain."[3] Plaintiff contends that Blake acted with deliberate indifference to his safety on March 13, 2007, which constituted an "excessive, maliciously [sic], and sadistically [sic] injury to Plaintiff [sic] health and safety." (Id.)

---

[3] Taken in the context of Plaintiff's complaint, the Court construes this statement to mean that Plaintiff did not ask or want Blake (or anybody else) to weld on the study cage while Plaintiff was locked inside of it.

    **C.    Blake's Statement Of Facts**

        **1.    Welding Performed On Plaintiff's Cage**

Defendant's Motion and attached Declarations provide an explanation of the incident on March 13, 2007,[4/] which is contrary to Plaintiff's account:

Blake worked at Calipatria State Prison as a locksmith from April 2004 until he retired in December 2010. [Declaration of Defendant Blake in Support of Defendant's Motion for Summary Judgment ("Blake Decl.") at ¶ 1.] On the morning of March 13, 2007, prior to the beginning of the normal work day, repairs were completed on all of the holding cells' tray slot locks and the locks on the door levers in the A.S.U. law library, but one of the door levers needed further repair. [Defendant's Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities in Support ("Motion for Summary Judgment") at 7.] Plaintiff was brought to the law library on the morning of March 13, 2007 and placed in a study cage. (Id.)

The study cages in the law library, have two locks on each door; one for the food tray port (used to pass food, papers, or other items into the cage) and another on the door lever used to open or close the cage. (Id.) On the date of the incident, Blake was verbally instructed to return (for a second time) to the law library to fix the lock on the door lever attached to cage number 6. (Id.) Blake briefly spoke to Armstrong, but Blake does not believe that Plaintiff overheard their conversation. (Id.)

---

[4/] For the remainder of this Report and Recommendation, "incident" will refer to the events of March 13, 2007.

1    Blake used a grinder to cut the chain from the door lever,
2 which took approximately one to three seconds. (Blake Decl. at ¶
3 8.)  Blake then used a welder to reattach the chain to the outer
4 lever, which took less than five seconds. (Id.)  It was a speedy
5 process. (Id.)  During the welding, a small flame was emitted from
6 the end of the welder, but the flame was focused on the object being
7 welded (the lock), not freely scattered. (Id. at ¶ 9.)  Tiny sparks
8 were discharged while Blake welded, but not beyond the area of the
9 tray slot, as a large metal plate protected the area where Blake
10 worked.[5] (Id.)

11    When Blake re-welded the chain on the outer door lever, he
12 did not hear Plaintiff say anything, nor did he hear Plaintiff make
13 any objections or complaints, as Plaintiff's back was to Blake.
14 (Id. at ¶ 10.)  If Blake had heard Plaintiff object to the welding,
15 he would have stopped and informed Plaintiff of what he was doing.
16 (Id.)  Accordingly, Blake did not even know Plaintiff's identity
17 until Plaintiff later filed his grievance. (Id. at ¶ 11.)  Blake
18 did not intend to hurt Plaintiff, nor did he conceive that he was
19 putting Plaintiff at any risk of harm because the tray slot metal
20 plate was located between Blake and Plaintiff during the welding,
21 and the entire repair process was short. (Id. at ¶ 12.)

---

[5] Plaintiff claims that the large metal plate was left open during the welding process. "[T]he passing slot was left open for Ofc. Armstrong [to] remove the handcuff section of the waist restraint [in order to] pass material back and forth, [but] Plaintiff did not close the passing slot, Ofc. Armstrong did not close it and we know Def. Blake did not close it." [Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Opposition") at 6; see also Plaintiff Genghis Khan Ali Stevenson, Supporting Declaration for Response to Defendant Blake Summary Judgment ("Stevenson Decl.") at ¶2 ("[I] left the passing slot up to get my legal request ready.")].

### 2. **Nurse's Examination Of Plaintiff**

Licensed Vocational Nurse, T. Molina ("Molina"), examined Plaintiff on March 13, 2007 at approximately 12:45 p.m. [Declaration of T. Molina in Support of Defendant's Motion for Summary Judgment ("Molina Decl.") at ¶ 3.] Plaintiff told Molina that he felt a burn on his skin and his vision was blurry. (Id. at ¶ 6.) Molina examined Plaintiff and found no indication that Plaintiff was burned. (Id.) In fact, Plaintiff has since admitted that he does not have any marks on his body resulting from the incident. [Deposition of Genghis Khan Ali Stevenson ("Stevenson Dep.") at 12.] Molina peered into Plaintiff's eye with an otoscope,[6] and concluded that Plaintiff's inner pupil was "somewhat red," but she saw no signs of a foreign object or any scratch to the cornea or other surface of the eye. (Molina Decl. at ¶ 7.) Moreover, Molina conducted a Snellen test,[7] which determined that Plaintiff had 20/20 vision. (Id.) Molina cleaned out Plaintiff's eye with saline solution. (Id.)

On March 14, 2007, Plaintiff was examined by his primary care physician S. Young ("Dr. Young").[8] (Motion for Summary Judgment at 9.) During that visit, Plaintiff denied all signs of eye problems. (Id.) Plaintiff was told to schedule another appointment in a month

---

[6] An otoscope is "an instrument for examining the interior of the ear, especially the eardrum, consisting essentially of a magnifying lens and a light." McGraw-Hill Concise Dictionary of Modern Medicine (2007), *available at* http://medical-dictionary.thefreedictionary.com/otoscope. (An otoscope can also be used in eye examinations.)

[7] A Snellen test is a "test for visual acuity using a Snellen chart." McGraw-Hill Concise Dictionary of Modern Medicine (2007), *available at* http://www.thefreedictionary.com/Snellen+Test.

[8] The Court notes that Blake has not attached a Declaration from Dr. Young regarding his/her examination of Plaintiff.

for a follow-up, or to return to see Dr. Young sooner if he was having problems with his eye. (Id.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) mandates the grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). But "[i]f reasonable minds could differ," judgment should not be entered in favor of the moving party. Id. at 251; see also Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007) ("If a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied.") (alteration omitted).

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to their case. Anderson, 477 U.S. at 252; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Lack of genuine issues of material fact on a single element of a claim for relief is sufficient to warrant summary judgment on that claim. Celotex Corp., 477 U.S. at 322-23.

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, and "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's

case." Id. at 325; see also Fed. R. Civ. P. 56(c). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the nonmoving party to establish beyond the pleadings, that there is a genuine dispute for trial. Celotex Corp., 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiffs' favor, could convince a reasonable jury to find for the plaintiff." Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Rule 56; Celotex Corp., 477 U.S. at 323; Anderson, 477 U.S. at 249).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. Blake Is Not Entitled To Summary Judgment On Plaintiff's Eighth Amendment Claim

Plaintiff asserts that Blake violated his Eighth Amendment right to be free from cruel and unusual punishment because Blake was deliberately indifferent to Plaintiff's safety when he welded on the door of the holding cage while Plaintiff was locked inside of the cage. (Complaint at 3.) Blake asserts that Plaintiff's Eighth

Amendment rights were not violated. (Motion for Summary Judgment at 12.)

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). To succeed on the merits of a deliberate indifference claim, Plaintiff must show that: (1) the Defendant knew Plaintiff faced a substantial risk of serious harm; and (2) Defendant disregarded that risk by failing to take reasonable measures to abate it. <u>Id.</u> at 847. In order to establish the second element of the <u>Farmer</u> test, a defendant must know of and disregard an excessive risk to inmate health or safety. <u>Id.</u> at 837. Therefore, a plaintiff must prove more than mere negligence on the defendant's part. <u>Robins v. Meecham</u>, 60 F.3d 1436, 1440 (9th Cir. 1995); <u>see</u> <u>also</u> <u>L.W. v. Grubbs</u>, 92 F.3d 894, 900 (9th Cir. 1996) ("Deliberate indifference to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger, is enough. Less is not a enough.").

Here, Plaintiff alleges that Blake ignored Armstrong, and welded on the cage, even though Armstrong directed Blake's attention to Plaintiff's positioning inside the holding cage. [Complaint at 3; <u>see</u> <u>also</u> Stevenson Decl. at ¶ 7 ("I witness[ed] Ofc. T. Armstrong [stepping back] trying to protect herself and [she told] Def. Blake, 'Can't you see that I have inmates in here?' And to stop it. Def. Blake ignore[d] [Armstong].")]. Plaintiff was only one foot away from where Blake welded. (Complaint at 3.) During the incident, Plaintiff and Armstrong requested Blake to stop because Plaintiff was being burned by the fire, sparks, and flames emitted during the

process. (Id.; see also Stevenson Decl. at ¶¶ 6, 12.) Plaintiff says that the welding continued for over five minutes. (Stevenson Decl. at ¶ 12.)

Blake argues that the elements of the Farmer test have not been met because Plaintiff has not shown that Defendant perceived any risk of harm to Plaintiff "because there was a solid metal barrier (the tray slot metal plate) between Stevenson and the welding, and the repairs were very quick." [Motion for Summary Judgment at 12; see also Blake Decl. at ¶ 12 ("I do not believe the sparks went beyond the area of the tray slot, as this large metal plate protected the area where I was welding.")]. As noted above, Plaintiff asserts that the metal plate was left open. Therefore, if the tray slot metal plate was left open, Blake may have had knowledge of Plaintiff's substantial risk of serious harm, especially because Plaintiff told Blake that sparks were striking him. Additionally, if the tray slot metal plate was left open, it is clear that Blake did not take reasonable steps to alleviate the harm, if he in fact welded for over five minutes, despite Plaintiff's cries for help.

"If conflicting inferences may be drawn from the facts, the case must go to the jury." LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir. 2000) (citations omitted). Here, Plaintiff's and Blake's version of the incident differ in material respects. Neither Plaintiff nor Blake presented a statement or declaration of Armstrong (the only third party witness) regarding the incident's duration or the positioning of the tray slot metal plate. However, Correctional Plant Manager II, S. Ochoa ("Ochoa"), recommended further administration action be taken regarding the incident in the

Confidential Supplement to Appeal: "Appeal Inquiry." This Court is not prepared to declare the record so lopsided that Blake must prevail as a matter of law. See <u>Anderson</u>, 477 U.S. at 255 (maintaining that justifiable inferences are to be drawn in non-movant's favor); <u>see also</u> <u>Nelson v. City of Davis</u>, 571 F.3d 924, 929 (9th Cir. 2009) ("A judge must not grant summary judgment based on his determination that one set of facts is more believable than another."). Here, there is a question of fact as to whether the tray slot metal plate was opened or closed during the time when Blake welded on the holding cage in which Plaintiff was placed. If the tray slot metal plate was open during the welding, and Blake welded for more than five minutes, a trier of fact could find that Blake knew that Plaintiff faced a substantial risk of serious harm and that Blake disregarded the risk by failing to take reasonable steps to abate it. As a result, the Court RECOMMENDS that Blake's Motion in this regard be DENIED.

### B. **Defendant Is Not Entitled To Summary Judgment Even Though Plaintiff Suffered *De Minimis* Injuries**

Blake contends that Plaintiff did not suffer any physical injuries based on Molina's report, which indicated that she "found no signs of any burn marks such as blisters, welts, redness, or any other objective indicia of having been burned." (Molina Decl. at ¶ 6.) Even if Plaintiff did not suffer physical injury, the Court rejects the argument that physical injury is required for a Plaintiff to establish an Eighth Amendment claim. In <u>Farmer</u>, the Supreme Court specifically rejected the argument that an inmate must wait until he is actually harmed to bring his Eighth Amendment claim. 511 U.S. at 846 ("[A] subjective approach to deliberate

indifference does not require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event... before obtaining relief.'") (citations omitted). Although Farmer was decided in the context of injunctive relief, where the petitioners in that case sought to prevent a substantial risk of harm from ripening into actual harm, the Court declines to depart from the plain language of that case, which requires inmates only to "face a substantial risk of serious harm," not suffer actual harm.[9/] Id. at 847.

However, the Court is of the opinion that Plaintiff's injuries were *de minimis*, and agrees with Blake that Plaintiff cannot recover for psychological injury. 42 U.S.C. § 1997e(e). Section 1997e(e) bars federal civil actions by prisoners for mental or emotional suffering that occurs while in jail absent physical injury. The Ninth Circuit has determined that a plaintiff who suffers *de minimis* injury is similarly barred from bringing a 1997e(e) action. Oliver v. Keller, 289 F.3d 623, 629 (9th Cir. 2002) (concluding that appellant's injuries that included mild back and leg pain, and a canker sore were *de minimis*). Similarly here, Plaintiff's contention that he may need long-term eye care is unsupported by the record, and his burnt arm hair cannot be considered more than a *de minimis* injury.

### C. **Plaintiff's Request For Additional Discovery Is Denied**

Plaintiff seeks to obtain affidavits from Armstrong and Lima regarding the incident because Plaintiff claims that they are eye

---

[9/] The Court notes that Plaintiff's version of the incident is inconsistent with his benign injuries. If Blake welded on Plaintiff's cage for five to ten minutes while sparks dispersed everywhere, Plaintiff probably would have been subjected to more than burnt arm hair and a red eye. But Plaintiff's and Blake's version of the incident significantly differ such that summary judgment is precluded.

witnesses that could "give [] first hand account[s]" of the incident, and Plaintiff "requested these documents in discovery." [Plaintiff's Request to Deny Defendant Blake Summary Judgment; Rule 56(f) of the Federal Rules of Civil Procedure ("Rule 56(f) Motion") at 2.]  The Court construes this to mean that the Plaintiff is referring to his Request for Production of Documents, No. 3, which states:

> Any and all documents, written reports, originals or copies, identifiably as "Confidential Supplement to Appeal Inquiry Log No. CAL-A-07-0054" of Calipatria State Prison Completion of the investigation final review concerning the incident of March 13, 2007.

Documents responsive to this request were produced by Blake pursuant to this Court's Order of October 3, 2012, and with the Declaration of M. Ormand in Support of Blake's Opposition to Plaintiff's Motion for Sanctions. Affidavits of Armstrong and Lima were not included in those productions of documents.  In any event, Plaintiff had ample time to obtain the statements of, or take the depositions of, Armstrong and Lima, and did not do so.  Therefore, Plaintiff's request is DENIED because the discovery cutoff in this case has long since expired.

### D. **Blake Is Not Entitled To Qualified Immunity**

Blake contends that summary judgment is proper because he is entitled to qualified immunity in that he did not violate Plaintiff's constitutional rights.  Plaintiff contends that Blake is not entitled to qualified immunity because "this case presents... misconduct so egregious that any reasonable official would have known that it violates the Constitution..." (Opposition at 10.)

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless

their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001).[10]

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Id. at 197 [quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)]. The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526. Thus, the Supreme Court has "repeatedly... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).[11]

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in light most favorable to the party asserting the injury, do the facts alleged

---

[10] Pursuant to the holding in Pearson v. Callahan, 555 U.S. 223 (2009), the Court uses its discretion, and determines the qualified immunity issue, for purposes of summary judgment, pursuant to the Saucier two-step inquiry.

[11] "[Q]uite aside from the special concerns regarding the need for early resolution of matters concerning immunity, litigants are ordinarily entitled to resolution of their summary judgment motions through a determination whether there are material facts in dispute regarding the elements necessary to establish liability." Paine v. City of Lompoc, 265 F.3d 975, 984 (9th Cir. 2001) (internal citation omitted).

show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier, 533 U.S. at 199 [citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)]. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

"On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. Thus, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. [citing Anderson, 483 U.S. at 640)]. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to the reasonable officer that his conduct was unlawful in the situation he confronted." Id. [citing Wilson v. Layne, 526 U.S. 603, 615 (1999) ["(A)s... explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.")]. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 2156-57 [citing Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.")].

Here, viewed in a light most favorable to Plaintiff, Blake may have violated Plaintiff's Eighth Amendment right when he welded on the lock of Plaintiff's cage for over five minutes while Plaintiff asked Blake to stop because Plaintiff was getting burned. As stated above, the Court has found a question of fact as to whether Plaintiff was free from cruel and unusual punishment and whether Blake was deliberately indifferent to Plaintiff's safety. Therefore, pursuant to the analysis under Saucier, Plaintiff may be able to show to a trier of fact that his Eighth Amendment rights were violated.

Further, it is clearly established than an inmate must be free from cruel and unusual punishment pursuant to the Eighth Amendment. Since the Court has found a question of fact as to whether Plaintiff was free from cruel and unusual punishment, so too is there a question of fact as to whether Blake knew welding on the lock of a holding cage for over five minutes while being asked to stop by the Plaintiff incarcerated in that cage, because that inmate was being burned by sparks, violated clearly established law. Therefore, Blake is not entitled to summary judgment as to qualified immunity under the circumstances of this case.

## IV. CONCLUSION AND RECOMMENDATION

The Court, having reviewed Blake's Motion for Summary Judgment, Plaintiff's Opposition to the Motion for Summary Judgment, Blake's Reply, and all the documents lodged therewith and attached thereto, finds that a question of facts exists at to whether Blake violated Plaintiff's Eighth Amendment rights. Further, the Court finds that Blake is not entitled to qualified immunity under the circumstances of this case. Therefore, the Court RECOMMENDS that

Defendant's Motion for Summary Judgment be DENIED.  The Court also DENIES Plaintiff's request for additional discovery.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than February 15, 2013, any party to this action may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than March 1, 2013.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 1, 2013

Hon. William V. Gallo
U.S. Magistrate Judge